**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| CALIPER LIFE SCIENCES, INC., and XENOGEN CORPORATION | No.: 4:10-cv-00076-RAS |
| and | Judge Richard A. Schell |
| THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY | |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| CARESTREAM HEALTH, INC. | |
| Defendant. | |

**DEFENDANT CARESTREAM HEALTH, INC.'S MOTION
TO TRANSFER VENUE PURSUANT TO SECTION 1404(a)**

Dated:  April 19, 2010

Clyde Siebman
SIEBMAN, BURG, PHILLIPS &
SMITH,  LLP.
Federal Courthouse Square
300 N. Travis Street
Sherman, Texas  75090

Stephen M. Hankins
John A. Bannon
Paul M. Previde
Luke T. Shannon
SCHIFF HARDIN LLP
233 S. Wacker Drive
Suite 6600
Chicago, Illinois 60606

Counsel for Defendant
  CARESTREAM HEALTH, INC.

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 1

DISCUSSION ................................................................................................................... 4

I.      THERE IS NO CONNECTION BETWEEN THE SUBJECT MATTER OF THIS
        ACTION AND THE EASTERN DISTRICT OF TEXAS ............................................ 6

II.     THE DISTRICT OF CONNECTICUT IS A FAR MORE CONVENIENT
        FORUM ........................................................................................................................ 7

        A.     If Anywhere, The Action Should Have Been Brought In The District Of
               Connecticut ....................................................................................................... 7

        B.     Private Interest Factors Significantly Favor The District Of Connecticut ........... 8

               1.     The Relative Ease Of Access To Sources Of Proof Significantly
                      Favors Transfer ...................................................................................... 9

                      a.     Carestream's Documentary And Electronic Evidence And
                             Its Witnesses Regarding The Accused Products Are
                             Located In Connecticut ............................................................... 9

                      b.     Additional Evidence And Witnesses Relevant To Plaintiff's
                             Claims Of Patent Infringement Do Not Weigh Against
                             Venue In The District Of Connecticut ...................................... 11

               2.     The Availability Of Compulsory Process To Secure The
                      Attendance Of Witnesses Does Not Weigh Against Transfer ............... 12

               3.     The Cost Of Attendance For Willing Witnesses Significantly
                      Favors Transfer .................................................................................... 12

        C.     Public Interest Factors Significantly Favor The District Of Connecticut ........... 13

               1.     Having Localized Interests Decided At Home Significantly Favors
                      Transfer ............................................................................................... 13

               2.     The Remaining Public Interest Factors Are At Worst Neutral And
                      In No Way Favor The Eastern District Of Texas ................................. 14

III.    IN THE ALTERNATIVE, THE WESTERN DISTRICT OF NEW YORK IS
        ANOTHER FAR MORE CONVENIENT FORUM .................................................... 15

        A.     Private And Public Interest Factors Significantly Favor The Western
               District Of New York ...................................................................................... 15

IV.     ALSO IN THE ALTERNATIVE, THE NORTHERN DISTRICT OF
        CALIFORNIA IS A FAR MORE CONVENIENT FORUM ....................................... 16

        A.     Private And Public Interest Factors Significantly Favor The Northern
               District Of California ...................................................................................... 16

## TABLE OF CONTENTS
(continued)

**Page**

CONCLUSION .................................................................................................................. 18

# TABLE OF AUTHORITIES

## CASES

*Aten Int'l Co., Ltd. v. Emine Tech. Co., Ltd.*,
  261 F.R.D. 112 (E.D. Tex. 2009) ................................................................. 14

*Frederick v. Advanced Fin. Solutions*,
  558 F. Supp. 2d 699 (E.D. Tex. 2007) ............................................................ 5

*Fujitsu Ltd. v. Tellabs, Inc.*,
  639 F. Supp. 2d 761 (E.D. Tex. 2009) .......................................................... 14

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501, 67 S.Ct. 839, 91 L.Ed 1055 (1947) .................................... 4, 13

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ........................................................... passim

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009) ..................................................................... 7

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) .......................................................... 5, 7, 14

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ............................................................... passim

*Mini Melts, Inc. v. Uniworld Corp. Will*,
  No. 4:07-cv-069, 2008 WL 4441979 (E.D. Tex. Sept. 25, 2008) .......... 4, 12, 14

*Neil Bros., Ltd. v. World Wide Lines, Inc.*,
  425 F. Supp. 2d 325 (E.D.N.Y. 2006) ............................................................ 9

*Ray Mart, Inc. v. Stock Bldg. Supply of Tex., L.P.*,
  435 F. Supp. 2d 578 (E.D. Tex. 2006) .......................................................... 13

*Van Dusen v. Barrack*,
  376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) ........................................ 4

*Yett v. Peters*,
  Civil No. 4:06cv473, 2008 WL 177873 (E.D. Tex. Jan. 18, 2008) .................. 12

## STATUTES

28 U.S.C. § 1391(a) ....................................................................................... 15

28 U.S.C. § 1391(b) ......................................................................................... 8

28 U.S.C. § 1391(b)(2) ..................................................................................... 8

28 U.S.C. § 1391(c) ....................................................................................... 15

28 U.S.C. § 1400(b) .................................................................................. 8, 16

28 U.S.C. § 1404(a) ............................................................................... passim

Pursuant to 28 U.S.C. § 1404(a), Defendant Carestream Health, Inc. ("Carestream"), respectfully moves to transfer venue to the United States District Court for the District of Connecticut. In support of its motion, Carestream submits the Declaration of William McLaughlin, and states as follows:

## INTRODUCTION

This lawsuit never should have been brought in this venue. The Eastern District of Texas has *no* connection to this dispute. Neither the plaintiffs, nor Carestream has a significant place of business here. None of the material events that led to this lawsuit has any connection to the Eastern District of Texas. None of the relevant evidence is located here. None of the party or third-party witnesses are located here.

For the record of this case to be developed and a proper trial held, there are at least *three* other venues that are far more convenient to Texas: the District of Connecticut (Carestream's molecular imaging operations center), the Western District of New York (Carestream's headquarters), and the Northern District of California (location of the inventors, patent prosecutors, and two of the three plaintiffs). Each of these venues is clearly more convenient to the litigation of this case and a transfer to Connecticut would better serve the interests of justice. In sum, there is simply no reason for this case to continue in the Eastern District of Texas, and the convenience of the parties and witnesses and the interest of justice will clearly be served by a transfer to Connecticut.

## BACKGROUND

For purposes of this venue motion, the background facts are straightforward. In the first place, on the face of the Complaint there is no connection to the Eastern District of Texas or, for that matter, the state of Texas. Plaintiffs Caliper Life Sciences, Inc. ("Caliper"), Xenogen Corporation ("Xenogen"), and The Board of Trustees of the Leland Stanford Junior

University ("Stanford") (collectively "Plaintiffs") filed this lawsuit for patent infringement against Carestream alleging infringement of U.S. Patent Numbers 5,650,135; 7,198,774; 6,649,143; 6,939,533; 6,923,951; 6,890,515; and 6,908,605 (collectively the "patents-in-suit") by the Accused Products.  (Compl. at 1-2.)   Caliper and Xenogen are located in Hopkinton, Massachusetts. (Compl. ¶ 5.)  Stanford is in Stanford, California.  (Compl. ¶ 4.)  The Complaint contains no allegation that any occurrence giving rise to this litigation, any evidence, or any witness has any connection to this judicial district or to the State of Texas.  At best, Plaintiffs allege only that Carestream has a sales office in Texas, but make no allegation of relevance to the underlying patent claims, patents-in-suit, or Accused Products.  (*See* Compl. ¶ 6.)

Plaintiffs simply cannot allege any such connection because none exists.  Carestream maintains no facility in the Eastern District of Texas, including Plano, Texas, from which it markets or sells the *in vivo* or *in vitro* imaging systems that are the Accused Products in this lawsuit.  (Decl. of William McLaughlin ¶ 21 (the "McLaughlin Decl.," attached hereto as **Exhibit A**).)  Indeed, Carestream has no physical presence in this district.  Carestream vacated the alleged Plano office in October 2009, and it no longer has any lease obligations for the Plano office space.  All contractual obligations associated with the Plano office cased as of December 31, 2009.  (Decl. of Mark A. Caton ¶¶ 2-3 (the "Caton Decl.," attached hereto as **Exhibit B**).)

Furthermore, Carestream's molecular imaging devices are separate product lines managed, marketed, produced, and sold by Carestream's separate business unit, Carestream Molecular Imaging ("CMI").  (*Id*. ¶ 5.)  CMI's only presence in Texas is through its sales representative Matthew Laverdiere, who resides in Magnolia, Texas, located in the Southern District of Texas, and its Product Manager Craig Smith, who resides in San Antonio, Texas, located in the Western District of Texas.  (*Id*. ¶ 22.)  Mr. Laverdiere's sales territory is quite

large encompassing Louisiana, Arkansas, Oklahoma, Mississippi, Alabama, Georgia, Florida, North Carolina, South Carolina, Tennessee, and Maryland, as well as Texas. (*Id.*) Mr. Smith's job duties are not specific to Texas but are nationwide, and as such he performs a significant proportion of his work in Woodbridge, Connecticut, at CMI's facility there. (*Id.*)

On the other hand, Carestream and CMI's evidence and witnesses relevant to this action are located in three venues outside of Texas. This is a patent infringement action, which necessarily focuses on the accused products and the activities of the accused infringer. Here, the focus of the lawsuit will be on the alleged products and activities of Carestream's molecular imaging group, CMI. As set forth herein, CMI has identified as many as thirteen of its employees that have relevant testimonial evidence on CMI's products, development, sales, marketing, training, technical support, and finance. (*See id.* ¶¶ 3-28.) Carestream's headquarters is located in Rochester, New York. (*Id.* ¶ 2.) However, CMI is located in Woodbridge, Connecticut, which is just outside of New Haven, Connecticut. (*Id.* ¶ 5.) While many of the business functions are divided between Rochester and Woodbridge, the majority of the physical and electronic evidence that is relevant to this lawsuit is located in CMI's Woodbridge, Connecticut, facility. (*Id.* ¶ 7.)

Similarly, Carestream's headquarters in Rochester, New York is the location of relevant evidence and of witnesses with relevant testimony, making the Western District of New York more convenient than the Eastern District of Texas. Non-party witnesses, employees of Kodak located in Rochester, may also be relevant to this matter. (*See id.* ¶ 14.) For example, the part of CMI's cameras that comprises the electronic device that actually measures and records the images—the CCD or "charged-coupling device"—is designed and developed by Kodak for use by CMI and other Kodak customers. (*Id.*)

Finally, a significant number of party and non-party witnesses are located in the Northern District of California, making that district, too, more convenient than the Eastern District of Texas.  All of the inventors of all seven patents-in-suit are located in the Northern District of California.  (Compl. Ex. A-G.)  Furthermore, it appears that the attorneys responsible for prosecuting the seven patents-in-suit are also located in the Northern District of California.

### DISCUSSION

Section 1404(a) provides that:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The decision whether to transfer is based on an "individualized, case-by-case consideration of convenience and fairness."  *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); *see also In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009).  Once the Court determines that the matter could have been brought before a proposed transferee court, the Court must examine factors relating to the interests of the parties and of the judiciary.  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed 1055 (1947); *Mini Melts, Inc. v. Uniworld Corp. Will*, No. 4:07-cv-069, 2008 WL 4441979, *1 (E.D. Tex. Sept. 25, 2008).  Under well-established law in the Fifth Circuit, the Court must consider four private interest factors and four public interest factors to determine whether a case should be transferred.

The private interest factors are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (internal quotations omitted).

The public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.* (internal quotations and alteration omitted).

In considering these factors, moreover, the Plaintiffs' choice to bring suit in this District is entitled to little, if any, deference. The Court may not, for example, treat "the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).[1] Indeed, even before recent Fifth Circuit precedent, this Court has declined to defer to Plaintiffs' choice of forum where, as here, this District is *not* the Plaintiffs' home district. *See Frederick v. Advanced Fin. Solutions*, 558 F. Supp. 2d 699, 703-04 (E.D. Tex. 2007) (Schell, J.) ("The plaintiff's forum choice is given less weight when the plaintiff brings suit outside of its home district.").

Furthermore, without any relevant connection to this District, the Court may not resort to viewing Texas as a "centralized location" equally convenient (or inconvenient) for all witnesses:

> [T]he district court improperly used its central location as a consideration in the absence of witnesses within the plaintiff's choice of venue. . . . Because a substantial number of material witnesses reside within the transferee venue and the state of California, and no witnesses reside within the Eastern District of Texas, the district court clearly erred in not determining this factor to weigh substantially in favor of transfer [to the Northern District of California].

---

[1]  Indeed, any deference to the Plaintiffs' choice of forum is *already* reflected in defendant's burden of proof. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) ("Rather, the plaintiff's choice of venue corresponds to the burden that a moving party must meet in order to demonstrate that the transferee venue is a clearly more convenient venue." (citations omitted)).

*In re Genentech, Inc.*, 566 F.3d 1338, 1344-45 (Fed. Cir. 2009).

Upon a proper analysis of these considerations, venue in the Eastern District of Texas is neither convenient nor in the interests of justice.

## I.   THERE IS NO CONNECTION BETWEEN THE SUBJECT MATTER OF THIS ACTION AND THE EASTERN DISTRICT OF TEXAS

Venue should be transferred because *neither* Plaintiffs nor Defendant has any connection to the Eastern District of Texas. *None* of the Plaintiffs call the Eastern District of Texas its "home" district, and *none* of the Plaintiffs have *any* connection to this District. Furthermore, none of Carestream's evidence or witnesses are located here. Indeed, here there are no witnesses, no evidence, no acts or occurrences, nor even any allegations in the Complaint to suggest that this action has the slightest connection to this District.

At best, Plaintiffs allege – erroneously – only that Carestream has a sales office in Texas, but even then they make no allegation of the relevance of this fact to the underlying patent claims, patents-in-suit, or Accused Products. (*See* Compl. ¶ 6.) Plaintiffs cannot allege any such connection because none exists. Carestream maintains no facility in the Eastern District of Texas, including Plano, Texas, from which it markets or sells the *in vivo* or *in vitro* imaging systems that are the Accused Products in this lawsuit.[2] (McLaughlin Decl., Ex. A, ¶ 21.) Indeed, Carestream has no physical presence in this district. Carestream vacated the alleged Plano office in October 2009, and it no longer has any lease obligations for the Plano

---

[2] Plaintiffs' own exhibits that purport to back-up their allegations only highlight that their claims have *no* connection to this District. For example, the Complaint refers to a Scientific Insights paper which apparently has nothing to do with Texas, and its stated authors are from Rochester, New York (Eastman Kodak Co.), Brookfield, Connecticut (Sibtech, Inc.), and Farmington, Connecticut (University of Connecticut Health Center). (*See* Compl. Ex. H.) The Complaint itself cites the Carestream website page and alleges that the images posted on it came from the Van Andel Institute in Grand Rapids, Michigan. (*See* Compl. Ex. I; Compl. ¶ 35.) Similarly, the authors of the cited Madero-Visbal article purport to be from institutions located outside this District. (*See* Compl. Ex. J.)

office space.  All contractual obligations associated with the Plano office cased as of December 31, 2009.  (Caton Decl., Ex. B, ¶¶ 2-3.)

Even if some of the Accused Products might have been sold in this District, that would not change the analysis.  The law is clear that the fact that some of the allegedly infringing products have been sold in this District is *not* sufficient to anchor a case to this District and prevent transfer.  *See, e.g., In re Nintendo Co., Ltd.,* 589 F.3d 1194, 1198 (Fed. Cir. 2009) ("The Fifth Circuit has unequivocally rejected the argument that citizens of the venue chosen by the plaintiff have a 'substantial interest' in adjudicating a case locally because some allegedly infringing products found their way into the Texas market." (citation omitted)); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008); *see also In re Volkswagen of Am., Inc.*, 545 F.3d 304, 318 (5th Cir. 2008).

With no connection to this District, there are any number of venues that are more convenient and more in the interest of justice.  Defendants have identified three districts in which this action could have been brought, each of which is substantially *more* convenient.

## II.   THE DISTRICT OF CONNECTICUT IS A FAR MORE CONVENIENT FORUM

The District of Connecticut is the location of a substantial amount of the documents, information, and electronically stored information, as well as a significant number of potential witnesses.  It is that District which has the most connection to this action and in which it should have been brought, if brought at all.

### A.   If Anywhere, The Action Should Have Been Brought In The District Of Connecticut

For reasons that will be fully explained at another time (and appropriately in another forum), this action has no merit whatsoever and should not have been brought at all.  That said, if anywhere, the action should have been brought in a district home where there is

*some* tie to the underlying conduct, witnesses and evidence.   For Carestream's molecular imaging division, implicated by Plaintiffs' claims here, that district is most clearly Connecticut.

Venue for this action would be proper in Connecticut under either Section 1391(b) or Section 1400(b) .  Section 1391(b) provides that venue is proper in a district in which "a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(b)(2).  Furthermore, Section 1400 provides that venue is proper in a district "where the defendant has committed [alleged] acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  Carestream's molecular imaging division—where the Accused Products were designed and developed, and are marketed, sold and supported—is located in the District of Connecticut.  (McLaughlin Decl., Ex. A, ¶ 5.)  Accordingly, the action could have been brought in the District of Connecticut.

In addition, whether the Plaintiffs can be found in this jurisdiction is not part of the analysis.  "[T]here is no requirement under § 1404(a) that a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts with the plaintiff; there is only a requirement that the transferee court have jurisdiction over the defendants in the transferred complaint."  *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009).

## B.   Private Interest Factors Significantly Favor The District Of Connecticut

As set forth above, the private interest factors the Court must consider are "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).  These factors weigh in favor of transfer.

1.      **The Relative Ease Of Access To Sources Of Proof Significantly Favors Transfer**

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quoting *Neil Bros., Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006)). This is a patent infringement action, which necessarily focuses on the accused product and the activities of the accused infringer. Here, the focus of the lawsuit will be on the alleged products and activities of Carestream's molecular imaging group, CMI, which is located in Woodbridge, in the District of Connecticut. Although recent technological advancements have improved accessibility of documents, the location of sources of proof remains an important consideration. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 316 (5th Cir. 2008) ("That access to some sources of proof represents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous.").

a.      **Carestream's Documentary And Electronic Evidence And Its Witnesses Regarding The Accused Products Are Located In Connecticut**

As one might expect, most of the relevant information concerning the Accused Products and CMI's activities are found in CMI's Woodbridge, Connecticut, facility. Similarly, the witnesses with relevant testimony are found in Woodbridge as well.

**Executive**.   CMI's General Manager, John S. DelliSanti, is located in Woodbridge, Connecticut. (McLaughlin Decl., Ex. A, ¶ 9.) Mr. DelliSanti has responsibility for the CMI business unit. (*Id.* ¶ 10.)

**Design And Development**.   While earlier design and development efforts were performed in Rochester, New York, as well as in Woodbridge, Connecticut, CMI has centralized

its engineering activities in its Woodbridge facility.  (*Id.* ¶ 11.)  All of the documentation with respect to the design, development and modification of the Accused Products is located in Woodbridge.  Development and maintenance of the Accused Products' hardware and software components is also done in Woodbridge.  (*Id.* ¶ 12.)

In addition, the engineers responsible for the current development of the Accused Products are also located in Woodbridge, Connecticut.  (*Id.* ¶ 13.)  These potential witnesses include:   William E. McLaughlin, the lead engineer and project manager for the Accused Products; and Douglas L. Vizard, a senior project engineer.  (*Id.*)

**Marketing**.   CMI's marketing function is also located in Woodbridge, Connecticut.  (*Id.* ¶ 15.)  CMI's marketing involves, among other things, advertising, trade show presentations, website development, which are all designed to generate leads.  Documentation concerning the marketing of the Accused Products is located in Woodbridge.  (*Id.* ¶ 16.)  CMI's Director of Marketing is Dennis A. Rossi; Mr. Rossi and his staff are located in Woodbridge. (*Id.* ¶ 17.)  Furthermore, each of CMI's product ranges has a Product Manager responsible for managing the lifecycle of the products.  (*Id.* ¶ 18.)  CMI's Product Manager for its *in vivo* imaging product line is Seth Gammon, and its *in vitro* imaging Product Manager is Craig Smith. (*Id*. at ¶ 19.)  Although ordinarily the Product Manager function would be in Connecticut, for reasons not related to their positions, Mr. Gammon and Mr. Smith reside outside of Woodbridge and work from their homes with periodic travel to CMI.  (*Id.*)  Both Mr. Gammon's and Mr. Smith's job functions require them to perform a significant amount of time at CMI's Woodbridge, Connecticut, facility.  (*Id.*)  Neither Mr. Gammon nor Mr. Smith lives in the Eastern District of Texas; Mr. Gammon lives in St. Louis, Missouri, and Mr. Smith lives in San Antonio, Texas.  (*Id.*)

**Sales**.  CMI's sales of the Accused Products are managed by its Global Director of Sales, Nicholas C. Mitropoulos, who is located in Woodbridge, Connecticut.  (*Id.* ¶¶ 20, 6.)

**Technical Support**.  CMI's Technical Support function is also located in Woodbridge, Connecticut.  (*Id.* ¶ 23.)  Among other things, this group is responsible for developing the product documentation such as the product operations manual, installation and training, conducting customer workshops, and providing customer support for the Accused Products.  (*Id.* ¶ 24.)  The documentation with respect to these functions is located in CMI's Woodbridge facility.  (*Id.* ¶ 25.)  CMI's world-wide Service Manager, Elizabeth L. White, oversees all of these functions.  (*Id.* ¶ 26.)

**Finance**.  Financial information concerning the accused products, such as gross and net sales, costs, and margins are collected and maintained in the Woodbridge, Connecticut, facility.  (*Id.* ¶ 27.)  CMI's Financial Manager, Dorian Hare, is located there as well.  (*Id.* ¶ 28.)

    b.    **Additional Evidence And Witnesses Relevant To Plaintiff's Claims Of Patent Infringement Do Not Weigh Against Venue In The District Of Connecticut**

There are of course, other sources of proof and other witnesses that are not located in the District of Connecticut.  Those party and third–party witnesses not located in Connecticut, however, are *less* inconvenienced by venue in Connecticut rather than in Sherman, Texas.  For example, New Haven is much closer to Hopkinton, Massachusetts, where plaintiffs Caliper and Xenogen are headquartered—just over 100 miles.  (*See* Decl. of Luke Shannon, ¶ 2 (the "Shannon Decl.," attached hereto as **Exhibit C**.)  Because so many sources of proof are located in or near the District of Connecticut, transferring this case would not merely shift the inconvenience among the parties, but would present greater convenience to most if not all parties.  Moreover, by filing suit in Texas, where none of the Plaintiffs have any connection,

Plaintiffs demonstrate that they are apparently willing to travel wherever trial of this case takes place.

Stanford, the inventors, and the patent prosecutors, are all located in northern California. That said, however, where witnesses must travel a significant distance no matter where they testify, any added distance that trying the case in the transferee court adds negligible inconvenience. *See In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009). Furthermore, the inconvenience of numerous witnesses can outweigh inconvenience to the plaintiff in travelling to a transferee court. *See Yett v. Peters*, Civil No. 4:06cv473, 2008 WL 177873, *4 (E.D. Tex. Jan. 18, 2008) ("[T]he Court finds that inconvenience to numerous witnesses, some of whom are from outside of Texas, outweighs the alleged (although not substantiated or specified) inconvenience to [the plaintiff] in travelling to [the transferee court].").

### 2. The Availability Of Compulsory Process To Secure The Attendance Of Witnesses Does Not Weigh Against Transfer

The availability of subpoena power for trial witnesses is a neutral factor here. Carestream is aware of no third-party witness within 100 miles of Sherman, Texas, that might be subpoenaed for testimony at trial. For that matter, there does not appear to be any relevant third-party witnesses within 100 miles of New Haven. Accordingly, this factor does not disturb the clear conclusion favoring transfer.

### 3. The Cost Of Attendance For Willing Witnesses Significantly Favors Transfer

The cost of attendance for willing witnesses is "the most important factor in a court's weighting of the Section 1404(a) factors." *Mini Melts, Inc. v. Uniworld Corp. Will*, No. 4:07-cv-069, 2008 WL 4441979, *4 (E.D. Tex. Sept. 25, 2008). Accordingly, where as here, a significant number of witnesses are *already* in the District of Connecticut, the lowered cost of attendance significantly favors transfer.

The mere fact that other witnesses must travel to the District of Connecticut does not alter this conclusion—especially, where those witnesses would have had to travel a considerable distance in the first place.  Where witnesses will be required to travel a significant distance no matter where they testify, "a substantial number of witnesses residing within the transferee venue who would be unnecessarily inconvenienced by having to travel away from home" weighs heavily  in favor of transfer.  *In re Genentech, Inc.*, 566 F.3d 1338, 1344-45 (Fed. Cir. 2009).[3]

**C.      Public Interest Factors Significantly Favor The District Of Connecticut**

As set forth previously, the public interest factors are "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008).

**1.      Having Localized Interests Decided At Home Significantly Favors Transfer**

There is simply no local interest that would justify burdening the people and the Court in this District with this case.  There is no connection of the parties or their interests to this jurisdiction.  This case does not involve Texas citizens and no damages have been suffered in Texas.  The citizens of Texas have no interest in deciding this case, and if anything would benefit from this case being tried *elsewhere*.  *See Ray Mart, Inc. v. Stock Bldg. Supply of Tex., L.P.*, 435 F. Supp. 2d 578, 596 (E.D. Tex. 2006) ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." (quoting *Gulf*

---

[3] The fourth private interest factor, all other practical problems that make trial of a case easy, expeditious and inexpensive, does not favor retention and is at best neutral.

*Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, 67 S.Ct. 839, 91 L.Ed 1055 (1947)); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 769 (E.D. Tex. 2009) (same); *Aten Int'l Co., Ltd. v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 125-26 (E.D. Tex. 2009) (same).

At best, Plaintiffs may allege that some Accused Products may have been sold in Texas.  Even if true, those sales cannot create a localized interest so as to establish proper venue. "[T]he mere fact that an accused product is available in this district is not a particularized interest that weighs against transfer." *Aten Int'l Co. Ltd. v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 126 (E.D. Tex. 2009); *see also In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (where the products were sold throughout the United States, rejecting argument that a localized interest exists and reasoning that Texas citizens have no more or less interest than the citizens of any other state).

On the other hand, CMI is located in Woodbridge, Connecticut.  It is Connecticut that has a local interest in this controversy.  The local interest factor, then, significantly favors transfer.

**2.      The Remaining Public Interest Factors Are At Worst Neutral And In No Way Favor The Eastern District Of Texas**

No other public factor weighs against transfer.  They are all at best neutral. Although one of the factors that the Court may consider is the administrative difficulties flowing from court congestion, this Court "does not base transfer decisions on the relative workloads of this court and proposed transferee courts." *Mini Melts, Inc. v. Uniworld Corp. Will*, No. 4:07-cv-069, 2008 WL 4441979, *5 (E.D. Tex. Sept. 25, 2008).  Accordingly, "this factor is neutral." *Id.* Similarly, this lawsuit is based on federal patent law, and it is unlikely that any problem of conflict of laws will arise or any application of foreign law will be required.  The remaining factors of the familiarity of the forum with the law that will govern the case and the avoidance of

unnecessary problems of conflict of laws does not particularly favor either this venue or the District of Connecticut.  These factors then do not favor retention and are at best neutral.

In sum, there is no good reason for this case to remain in this District—the balance significantly favors transfer to the District of Connecticut.

## III. IN THE ALTERNATIVE, THE WESTERN DISTRICT OF NEW YORK IS ANOTHER FAR MORE CONVENIENT FORUM

The District of Connecticut is not the only more convenient district—the Western District of New York also offers considerably more convenience than the Eastern District of Texas.  In the first place, the action clearly could have been brought in the Western District of New York and venue is appropriate.  Rochester, New York, is Carestream's principal place of business and, for venue purposes, is where the defendant resides.  28 U.S.C. § 1391(a), (c).

### A. Private And Public Interest Factors Significantly Favor The Western District Of New York

In addition, a significant amount of documents, information and electronically stored information is located in Rochester, as well as a number of relevant witnesses.

Carestream's overall research and development is managed by it's R&D Group which is located in Rochester and is led by Carestream's Chief Technical Officer, Holly Hillberg.  (McLaughlin Decl., Ex. A, ¶ 4.)  Carestream's overall sales activities are supervised and managed from Rochester, New York.  CMI's sales activities are supervised and managed by its Global Director of Sales, Nicholas C. Mitropoulos, who is located in Woodbridge, Connecticut, and by its North and South America Director of Sales, Scott Ireland, who is located in Rochester, New York.  (*Id*. ¶ 6.)  Similarly, Carestream's legal, financial and marketing functions are centralized in Rochester and testimony from Carestream's Chief Financial Officer, Mike Pomeroy, and its Chief Marketing Officer, Norm Young, may be necessary.  (*Id*. ¶ 3.)

The availability of process, moreover, significantly favors New York.  Non-party witnesses, such as certain employees of Kodak located in Rochester, may also be relevant to this matter.  (*See id*. ¶ 14.)  For example, the part of CMI's cameras that comprises the electronic device that actually measures and records the images—the CCD or "charged-coupling device"—is designed and developed by Kodak for use by CMI and other Kodak customers.  (*Id.*)

As with the District of Connecticut, the public interest factors significantly favor transfer to the Western District of New York over the Eastern District of Texas.  There is simply no local interest that would justify burdening the people and the Court in this District.  New York has a local interest in the controversy.  Similar to the District of Connecticut, no other public factor weighs against transfer.  They are all at best neutral.

In sum, there is no good reason for this case to remain in this District—the balance significantly favors transfer to the Western District of New York, if not to Connecticut.

## IV.   ALSO IN THE ALTERNATIVE, THE NORTHERN DISTRICT OF CALIFORNIA IS A FAR MORE CONVENIENT FORUM

In addition to the Districts of Connecticut and Western New York, the Northern District of California offers considerably more convenience than the Eastern District of Texas.  In the first place, the action clearly could have been brought in the Northern District of California and venue is appropriate.  Section 1400 provides that venue is proper in a district "where the defendant has committed [alleged] acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).

### A.   Private And Public Interest Factors Significantly Favor The Northern District Of California

A significant number of party and non-party witnesses are located in the Northern District of California, making that district, too, more convenient than the Eastern District of Texas.  All of the inventors of all seven patents-in-suit are located in the Northern District of

California; the patents-in-suit list inventors Christopher H. Contag, Pamela R. Contag, and David A. Benaron and their respective cities of residence, all of which are in the Northern District of California. (Compl. Ex. A-G.) Furthermore, it appears that the attorneys responsible for prosecuting the seven patents-in-suit are also located in the Northern District of California; the most recently issued patents-in-suit list the prosecuting firm as Robins & Pasternak LLP, located in Palo Alto, California, within the that district. (Compl. Ex. B-G; *see also* Shannon Decl., Ex. C, ¶ 3.) In addition, plaintiff Caliper has a facility in the Northern District of California in which, on information and belief, it develops, manufactures and supports its own molecular imaging products, so many of its key witnesses may reside in the Northern District of California.

With respect to compulsory process for trial, the prosecuting attorneys are third-parties. The inventors may be employed by Stanford and are party witnesses, but may in fact be third-party witnesses as well. Accordingly, the availability of process may even weigh in favor of the Northern District of California over the Eastern District of Texas.

As with the Districts of Connecticut and Western New York, the public interest factors significantly favor transfer to the Northern District of California over the Eastern District of Texas. Again, it must be stated that there is no local Eastern Texas interest that would justify burdening the people and the Court in this District – especially when compared to the Northern District of California which – like the two others proposed above – does have a local interest in the controversy. No public factor weighs against transfer. They are all at best neutral. In sum, there is no good reason for this case to remain in this District—the balance favors transfer to the Northern District of California.

## CONCLUSION

For all of the foregoing reasons, defendant Carestream respectfully requests that this Court grant its motion and order this matter transferred to the District of Connecticut, or in the alternative to either the Western District of New York or the Northern District of California, and grant such other and further relief the Court deems necessary under the circumstances.


Dated:  April 19, 2010                          Respectfully submitted,

                                              /s/ Clyde M. Siebman
                                        Clyde Siebman
                                        SIEBMAN, BURG, PHILLIPS & SMITH,  LLP.
Federal Courthouse Square
300 N. Travis Street
Sherman, Texas  75090

Stephen M. Hankins
John A. Bannon
Paul M. Previde
Luke T. Shannon
SCHIFF HARDIN LLP
233 S. Wacker Drive
Suite 6600
Chicago, Illinois 60606

Counsel for Defendant
   CARESTREAM HEALTH, INC.

## <u>CERTIFICATE OF CONFERENCE</u>

I HEREBY CERTIFY that in compliance with the requirements of Local Rule CV-7(h), I met and conferred with counsel for plaintiffs, Caliper Life Sciences, Inc., Xenogen Corporation, and the Board of Trustees of the Leland Stanford Junior University regarding this motion, and counsel for plaintiffs indicated that plaintiffs do not consent to this motion.

Dated: April 19, 2010                                    /s/ John A. Bannon
                                                    JOHN A. BANNON

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  All other parties and counsel of record who have not been served via the Court's CM/ECF system are being served with a true and correct copy of the foregoing via first class mail.

Dated: April 19, 2010                            /s/ Clyde M. Siebman
                                                CLYDE M. SIEBMAN